1
2
3
4
5
6
7

8                      **UNITED STATES DISTRICT COURT**

9                      **EASTERN DISTRICT OF CALIFORNIA**

10

11  JAMES D. SHAW,                    )  Case No.: 1:10-cv-02059-JLT
                                      )
12              Petitioner,           )  ORDER DENYING FIRST AMENDED PETITION
                                      )  FOR WRIT OF HABEAS CORPUS (Doc. 6)
13       v.                           )
                                      )  ORDER DIRECTING CLERK OF COURT TO
14  K. ALLISON, Warden,               )  ENTER JUDGMENT AND CLOSE FILE
                                      )
15              Respondent.           )  ORDER DECLINING TO ISSUE CERTIFICATE
                                      )  OF APPEALABILITY
16                                    )
                                      )
17  _____ )

18          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

19  pursuant to 28 U.S.C. § 2254.  On November 24, 2010, Petitioner filed his written consent to the

20  jurisdiction of the Magistrate Judge for all purposes.  (Doc. 5).  On January 26, 2011, Respondent filed

21  her written consent to the jurisdiction of the Magistrate Judge for all purposes.  (Doc. 13).

22                      **PROCEDURAL HISTORY**

23          Petitioner is in the custody of the California Department of Corrections and Rehabilitation

24  ("CDCR") serving an indeterminate sentence of 165 years-to-life plus a consecutive determinate

25  sentence of twenty years, pursuant to a 2008 judgment of the Superior Court of California, County of

26  Kern (the "Superior Court"), following a jury trial at which Petitioner was convicted of three counts of

27  lewd and lascivious acts with a child under the age of fourteen (Cal. Pen. Code § 288(a), two counts of

28  annoying/molesting with a prior § 288 conviction (Cal. Pen. Code § 647.6( c)(2), and one count of lewd

                                        1

1   and lascivious act with a child between the ages of fourteen and fifteen (Cal. Pen. Code § 288(c)(1).

2   (Lodged Document ("LD") 4, p. 3).  The jury also found true a multiple victim enhancement pursuant

3   to Cal. Pen. Code § 667.61(e)(5).  (Id.)  In a bifurcated proceeding, Petitioner admitted to multiple prior

4   "serious" or "violent" felonies that qualified as strikes under California's "Three Strikes" law (Cal. Pen.

5   Code §§ 667(d) & (e)).  (Id.).

6       Petitioner subsequently filed a direct appeal in the California Court of Appeals, Fifth Appellate

7   District (the "5th DCA"), which, on August 28, 2009, affirmed Petitioner's conviction in a partially

8   published opinion.  (LD 4).[1]  Petitioner filed a petition for review in the California Supreme Court,

9   which, on December 2, 2009, the state supreme court denied.  (LD 6).

10      On November 5, 2010, Petitioner filed the instant petition.  (Doc. 1). On December 3, 2010,

11  before Respondent filed an answer, Petitioner filed a first amended petition.  (Doc. 6).  Respondent's

12  answer to the first amended petition was filed on March 7, 2011.  (Doc. 15).  On April 11, 2011,

13  Petitioner filed his Traverse.  (Doc. 19).

14      Respondent concedes that all grounds for relief in the petition have been fully exhausted.

15  (Doc. 15, p. 7).

16  **FACTUAL BACKGROUND**

17  The Court adopts the Statement of Facts in the 5th DCA's published decision:

18  In 1985, Shaw was convicted in three separate counts of molesting a nine-year-old fourth
    grader whom he was babysitting. The victim, A.J., testified at trial that Shaw pushed her on the
19  bed and put his hand down her pants and digitally penetrated her vagina. Shaw told A.J. not to
    tell her parents or they would not love her anymore. In 1996, Shaw molested A.S., a relative,
20  who was around 14 or 15 years old. This molest was not reported to authorities but was
    handled within the family. In 2007, Shaw was charged with molesting three additional victims,
21  A.B., B.B., and B.M. The three girls ranged in age from 8 to 16 years.

22  A.B. testified that when she was eight, she was alone with Shaw in the bedroom. Shaw pushed
    her against the bed and when she fell back, Shaw moved his private parts in a circle between
23  her legs. She said he kept trying to move them toward her, almost pushed them on her and then
    brushed his private parts against her vaginal area. A.B. said Shaw asked her if it "felt good."
24  A.B. was afraid and pushed Shaw away and ran out of the room. A.B. reported the molestation
    to her mother a couple of months later after watching a television show about sexual predators.
25  A.B.'s mother confronted Shaw, but he denied this ever happened. At trial, he testified the two
    of them were just playing around, roughhousing.
26

27

28  ----
    [1] People v. Shaw, 177 Cal.App.4th 92 (2009).

2

B.M. was friends with Shaw's stepdaughters. Between December 2005 and January 1, 2006, when B.M. was 16 years old, Shaw took B.M. with him to a ranch for a day of horseback riding. B.M. thought Shaw's family would be with him, but when he picked her up, he was alone. On the ride to the ranch, Shaw made B.M. uncomfortable by asking her if she was a virgin and by telling her she should lose her virginity to an older man. After they rode for two to three hours in the company of the ranch's owner, Shaw took B.M. home. On the ride home, Shaw asked B.M. for a hug. He pulled her to the center of the front seat and kissed her. He put his arm around her, moved his hand to her breast and began rubbing it. When she pushed his hand away, he told her to stop fighting. He also moved his hand up and down her inner thigh, rubbing it. B.M. asked him to stop, but Shaw told her he knew it felt good and that they could pull over anytime.

B.M. told her mother what had happened after seeing a television show about a girl her age going through the same thing. B.M.'s mother, Theresa M., contacted police. The two of them worked with the police to record conversations with Shaw in which they confronted him. In these conversations, Shaw ultimately admitted that he had molested B.M. Two of the recorded interactions were played for the jury at trial, a taped phone conversation between Shaw and B.M. and a videotaped meeting between Shaw, B.M., and her mother.

B.B. was Shaw's stepdaughter's good friend. She was 12 when Shaw first molested her. The molestation occurred when they were alone in a trailer at the ranch or in Shaw's truck or in B.B.'s house. Although B.B. could not remember specific dates, she testified that Shaw touched her breasts, inner thighs, and vaginal area, both over and under her clothes. She testified that he digitally penetrated her a number of times, although not often. She said Shaw often took her to school. It was during these times that Shaw molested B.B. Shaw told B.B. that if she told anyone, people would hate her. After B.B.'s father learned of the allegations made by A.B. and B.M., he asked B.B. a number of times whether she had been touched inappropriately. Since B.B. was embarrassed and was afraid she would lose her friendship with Shaw's stepdaughter, she initially denied any inappropriate contact. Finally, after Shaw had been arrested on the other charges, B.B. told police what had happened.

Carol W., a cousin of Shaw's wife, testified about an incident that occurred between her and Shaw in 1999. She was an adult at the time. Shaw came to visit and said Carol needed a massage. She was not interested, but Shaw followed her to the bedroom and pushed her down on the bed. He began rubbing her legs, thighs, and vaginal area. He demanded a kiss and would not let her go. Finally, he left. Carol W. eventually informed police.

Shaw testified in his own behalf. He denied any inappropriate touching of the three victims, although he admitted the prior convictions.

(LD 4, pp. 4-6).

## DISCUSSION

### I.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3);  Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States

1  Constitution.  The challenged conviction arises out of the Kern County Superior Court, which is

2  located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

3        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

4  1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

5  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997);  Jeffries v.

6  Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other*

7  *grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after

8  statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore

9  governed by its provisions.

10  **II.**   **Legal Standard of Review**

11        A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless he

12  can show that the state court's adjudication of his claim:

13      (1)  resulted in a decision that was contrary to, or involved an unreasonable application of,
        clearly established Federal law, as determined by the Supreme Court of the United States;

14          or
    (2)  resulted in a decision that "was based on an unreasonable determination of

15          the facts in light of the evidence presented in the State court proceeding.

16  28 U.S.C. § 2254(d);  Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003);  Williams v. Taylor, 529 U.S. at

17  412-413.

18        A state court decision is "contrary to" clearly established federal law "if it applies a rule that

19  contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts

20  that is materially indistinguishable from a [Supreme Court] decision but reaches a different result."

21  Brown v. Payton, 544 U.S. 133, 141 (2005), citing Williams v. Taylor, 529 U.S. 326, 405-406 (2000).

22  A state court decision involves an "unreasonable application" of clearly established federal law "if the

23  state court applies [the Supreme Court's precedents] to the facts in an objectively unreasonable

24  manner."  Id., quoting Williams, 529 U.S. at 409-410; Woodford v. Visciotti, 537 U.S. 19, 24-25

25  (2002) (*per curiam*).

26        Consequently, a federal court may not grant habeas relief simply because the state court's

27  decision is incorrect or erroneous; the state court's decision must also be objectively unreasonable.

28  Wiggins v. Smith, 539 U.S. 510, 511 (2003) (citing Williams v. Taylor, 529 U.S. at 409).  In

4

1   Harrington v. Richter, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an

2   "unreasonable application" of federal law is an objective test that turns on "whether it is possible that

3   fairminded jurists could disagree" that the state court decision meets the standards set forth in the

4   AEDPA.  If fair-minded jurists could so disagree, habeas relief is precluded.  Richter, 131 S.Ct. at 786.

5   As the United States Supreme Court has noted, AEDPA's standard of "contrary to, or involv[ing] an

6   unreasonable application of, clearly established Federal law" is "difficult to meet," because the

7   purpose of AEDPA is to ensure that federal habeas relief functions as a "'guard against extreme

8   malfunctions in the state criminal justice systems,'" and not as a means of error correction.  Richter,

9   131 S.Ct. at 786, quoting Jackson v. Virginia, 443 U.S. 307, 332, 99 S.Ct. 2781, n. 5 (1979)(Stevens,

10  J., concurring in judgment).  The Supreme Court has "said time and again that 'an *unreasonable*

11  application of federal law is different from an *incorrect* application of federal law.'" Cullen v.

12  Pinholster, 131 S.Ct. 1388, 1410-1411 (2011).  Thus, a state prisoner seeking a writ of habeas corpus

13  from a federal court "must show that the state court's ruling on the claim being presented in federal

14  court was so lacking in justification that there was an error well understood and comprehended in

15  existing law beyond any possibility of fairminded disagreement."  Richter, 131 S.Ct. at 787-788.

16      Moreover, federal "review under § 2254(d)(1) is limited to the record that was before the state

17  court that adjudicated the claim on the merits."   Cullen, 131 S.Ct. at 1398 ("This backward-looking

18  language requires an examination of the state-court decision at the time it was made.  It follows that

19  the record under review is limited to the record in existence at the same time–i.e., the record before the

20  state court.")

21      The second prong of federal habeas review involves the "unreasonable determination" clause

22  of 28 U.S.C. § 2254(d)(2).  This prong pertains to state court decisions based on factual findings.

23  Davis v. Woodford, 384 F.3d at 637, citing Miller-El v. Cockrell, 537 U.S. 322 (2003).  Under

24  § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's

25  claims "resulted in a decision that was based on an unreasonable determination of the facts in light of

26  the evidence presented in the State court proceeding."  Wiggins v. Smith, 539 U.S. at 520;  Jeffries v.

27  Wood, 114 F.3d at 1500 (when reviewing a state court's factual determinations, a "responsible,

28  thoughtful answer reached after a full opportunity to litigate is adequate to support the judgment").  A

5

state court's factual finding is unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Id. ; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

The AEDPA also requires that considerable deference be given to a state court's factual findings.  "Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)."  Miller-El v. Cockrell, 537 U.S. at 340.  Both subsections (d)(2) and (e)(1) of § 2254 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-077 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court decided the petitioner's claims on the merits but provided no reasoning for its decision, the federal habeas court conducts "an independent review of the record...to determine whether the state court [was objectively unreasonable] in its application of controlling federal law."  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2002); see Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).   Where the state court denied the petitioner's claims on procedural grounds or did not decide such claims on the merits, the deferential standard of the AEDPA do not apply and the federal court must review the petitioner's 's claims de novo.  Pirtle v. Morgan, 313 F.3d at 1167.

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).  Some constitutional errors, however, do not require that the petitioner demonstrate

6

prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310 (1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas petition governed by the AEDPA alleges ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d 911, 918 n. 7 (9th Cir. 2002); Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009).

**III.    Review of Petitioner's Claims.**

The instant petition itself alleges the following as grounds for relief:

  I.      The Statute Of Limitations For § 647.6( c)(2) Violates Equal Protection

  II.     Insufficiency Of The Evidence As To Counts Two and Three

  III.    Abuse Of Discretion In Joinder Of Claims

  IV.     Exclusion Of Evidence Violated Due Process

I.       The Statute Of Limitations For § 647.6( c)(2) Violates Equal Protection

Petitioner first contends that his equal protection rights guaranteed by the Fourteenth Amendment were violated because he was subject to a longer statute of limitation for his violation of § 647.6(c)(2) than a defendant similarly situated and charged with a violation of § 647.6(a).  (Doc. 6, pp. 9-11).  This contention is without merit.

A.   The Fifth DCA's Opinion.

The 5th DCA rejected Petitioner's argument as follows:

Shaw was charged in count one with a felony violation of section 647.6, subdivision (c)(2), annoying or molesting a child under the age of 18 and having been previously convicted of a violation of section 288, subdivision (a). The statute provides that a person found to have violated this section "shall be punished by imprisonment in the state prison for two, four, or six years." (§ 647.6, subd. (c)(2).)  The offense was alleged to have occurred between December 16, 2005 and January 14, 2006. Prosecution began on April 30, 2007. Shaw contends that count one is barred by the one-year statute of limitations generally applicable to misdemeanor offenses, because section 647.6, subdivision (c)(2), does not change the underlying misdemeanor offense, it only enhances the sentence for recidivists. Shaw claims, "one should look to the conduct underlying the conviction to determine the applicable statute of limitations, without considering sentence enhancements due to recidivism."

Shaw relies on section 805, subdivision (a), which provides that "[a]n offense is deemed punishable by the maximum punishment prescribed by statute for the offense, regardless of the punishment actually sought or imposed. Any enhancement of punishment prescribed by statute

shall be disregarded in determining the maximum punishment prescribed by statute for an offense." (§ 805, subd. (a).) He also relies on case authority holding that sentence-elevating enhancements are not elements of the underlying offense. (See People v. Bouzas (1991) 53 Cal.3d 467, 478, 279 Cal.Rptr. 847, 807 P.2d 1076 (Bouzas ); People v. Turner (2005) 134 Cal.App.4th 1591, 36 Cal.Rptr.3d 888 (Turner ); People v. Whitten (1994) 22 Cal.App.4th 1761, 1765, 28 Cal.Rptr.2d 123 (Whitten ); People v. Coronado (1995) 12 Cal.4th 145, 152, 48 Cal.Rptr.2d 77, 906 P.2d 1232; People v. Merkley (1996) 51 Cal.App.4th 472, 476, 58 Cal.Rptr.2d 21.)

This issue, the appropriate statute of limitations to be applied to section 647.6, subdivision (c)(2), has been addressed by two other appellate courts in People v. San Nicolas (1986) 185 Cal.App.3d 403, 229 Cal.Rptr. 650 (San Nicolas ), which addressed the issue in the context of section 647a, the statutory precursor to section 647.6, subdivision (c)(2), and People v. McSherry (2006) 143 Cal.App.4th 598, 49 Cal.Rptr.3d 389 (McSherry ). Both courts concluded that when a defendant is charged with felony child annoyance or molestation as a recidivist, the appropriate statute of limitations is the three-year felony statute of limitations. We conclude these cases are persuasive and follow their lead.

The court in San Nicolas noted that a violation of former section 647a was defined statutorily as an offense with variable punishments according to the criminal history of the defendant. The court also observed that the prior conviction required for the maximum penalty did not work as an enhancement, i.e., an additional term of imprisonment added to a base term, but instead converted what would otherwise be a misdemeanor into a felony offense with a greatly increased maximum penalty. (San Nicolas, supra, 185 Cal.App.3d at p. 407, 229 Cal.Rptr. 650.) The court pointed out that to construe section 805 as the defendant in San Nicolas contended (and Shaw here contends) would lead to absurd results. "Such interpretation would erode the distinction between enhancements and elements of an offense in certain hybrid offenses. In effect, it would establish the same period of limitation for the prosecution of felonies and misdemeanors in those instances in which an offender's criminal history dictates the degree of the crime. That consequence surely could not have been intended by the Legislature and cannot be permitted. [Citation.]" (San Nicolas, supra, at p. 408, 229 Cal.Rptr. 650.)

McSherry, a more recent decision, adopted the reasoning of San Nicolas, enhancing the analysis with a reference to the legislative history of subsequent changes to the law. The McSherry court looked directly at the language of the statute, which expressly provides for a maximum sentence of six years. Under section 805, subdivision (a), the applicable statute of limitations is determined by the maximum punishment proscribed. A literal reading of the governing statutes supports a finding that the applicable statute of limitation is three years. (McSherry, supra, 143 Cal.App.4th at pp. 603–604, 49 Cal.Rptr.3d 389.) Next, the McSherry court noted that, "given the San Nicolas result in 1986, application of the misdemeanor statute of limitations in this case would run afoul of the rule of statutory construction that recognizes that where statutory language has been construed judicially, and the Legislature thereafter amends the statute but leaves the construed language intact, it is presumed the Legislature was aware of the prior construction and adopted it. [Citations.]" (Id. at p. 603, 49 Cal.Rptr.3d 389.)

The court explained that section 647.6, subdivision (c)(2), is a subsequent statute on a similar subject that uses substantially similar language to the statute construed by San Nicolas.

> "At the time of San Nicolas, section 802, subdivision (b), provided prosecution for a misdemeanor violation of former section 647a committed upon a minor under the age of 11 years, could be commenced within two years after commission of the offense.

8

(Stats.1985, ch. 1172, § 2, p. 3957.) In 1991, the Legislature amended section 802, subdivision (b), to increase the applicable age of the child from 11 years to 14 years and to add an express reference to section 647.6. (Stats.1991, ch. 129, § 1, p. 1328.) [¶] The Legislature amended section 802, subdivision (b), again in 2002 to increase the limitation period for a violation of section 647.6 when the victim was under the age of 14 years from two to three years. (Stats.2002, ch. 828, § 2.) By effecting these amendments without disturbing the judicial construction of the limitations period applicable to a violation of the precursor of section 647.6, subdivision (c)(2), the Legislature indicated its intent to adopt the <u>San Nicolas</u> result that the applicable statute of limitations for that offense is three years. [Citation.]" (<u>McSherry, supra,</u> 143 Cal.App.4th at pp. 603–604, 49 Cal.Rptr.3d 389.)

<u>McSherry</u> also noted that the legislative committee reports prepared in conjunction with the 2002 amendments to section 802, subdivision (b), state that the statute of limitations for child annoyance with a prior conviction was three years or more. (<u>McSherry, supra,</u> 143 Cal.App.4th at p. 604, 49 Cal.Rptr.3d 389; <u>see</u> Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2499 (2001–2002 Reg. Sess.) as introduced on Feb. 21, 2002, p. 7 [applicable statute of limitations is three years for repeat offenders]; Sen. Com. on Public Safety, Analysis of Assem. Bill No. 2499 (2001–2002 Reg. Sess.) as amended June 27, 2002, p. J [under current law, person previously convicted of child annoying as misdemeanor is punishable as felony for second or subsequent conviction; applicable statutes of limitations for these felony offenses is three years or more, depending upon penalty term].) This history reflects a legislative intention that the offense described in section 647.6, subdivision (c)(2), be subject to the three-year felony statute of limitations.

<u>McSherry</u> distinguishes <u>Turner, supra,</u> 134 Cal.App.4th 1591, 36 Cal.Rptr.3d 888, a case Shaw claims supports his position that the recidivist provision of section 647.6, subdivision (c)(2), is an enhancement and not part of the underlying offense for purposes of section 805. <u>McSherry</u> notes that the defendant in Turner was charged with residential robbery, which generally must be prosecuted within three years. Since a Three Strikes prior-conviction allegation subjected the defendant to a maximum term of 25 years to life in state prison, the trial court in <u>Turner</u> applied the never-expiring statute of limitations provided in section 799, which sets the statute of limitations for those offenses prescribing life terms. The appellate court in <u>Turner</u> reversed on the ground that the Three Strikes law is an alternative sentencing scheme, which should not govern the maximum punishment prescribed for the offense for purposes of determining the applicable statute of limitations. (<u>McSherry, supra,</u> 143 Cal.App.4th at p. 603, 49 Cal.Rptr.3d 389.) <u>McSherry</u> accurately concluded that section 647.6 does not involve an alternative sentencing scheme.

The remaining cases cited by Shaw do not require a different outcome. First, as with <u>Turner</u>, none of them are directly on point. In <u>Whitten, supra,</u> 22 Cal.App.4th at page 1764, 28 Cal.Rptr.2d 123, we held that it was improper to use a prior section 288 conviction to aggravate a sentence when it was also used to elevate a violation of section 647.6 to a felony conviction, a classic dual use of facts analysis. This is not the issue before us now. In <u>Whitten</u>, we noted that the prior-conviction component of section 647.6, subdivision (c)(2), was not an element of the offense and cited <u>Bouzas, supra,</u> 53 Cal.3d 467, 279 Cal.Rptr. 847, 807 P.2d 1076.

In <u>Bouzas</u>, the court considered whether the prior-conviction allegation found in section 666 (petty theft with a prior) was an element of the offense so that it had to be proved to the trier of fact in open court preventing the defendant from removing the prior conviction from the jury by stipulating to its existence. (<u>Bouzas, supra,</u> 53 Cal.3d at pp. 470–471, 279 Cal.Rptr. 847,

807 P.2d 1076.) The Bouzas court concluded it was not, describing the prior-conviction component of the offense as a "sentencing factor." (Id. at p. 480, 279 Cal.Rptr. 847, 807 P.2d 1076.) The court in People v. Merkley, supra, 51 Cal.App.4th 472, 476, 58 Cal.Rptr.2d 21, reached the same result when considering the same issue. None of these cases address the issue here. We have no problem with the holdings in each of these cases and do not believe a legal conclusion that the prior-conviction allegation is not an element of the offense precludes a finding that a sentence-elevating enhancement provision such as found in section 647.6, subdivision (c)(2), should be considered when setting the maximum punishment prescribed by statute for purposes of section 805, subdivision (a).

People v. Coronado, supra, 12 Cal.4th 145, 48 Cal.Rptr.2d 77, 906 P.2d 1232, another case cited by Shaw, supports our conclusion. In this case, the defendant argued that his prior conviction could not be used both to elevate his conviction to a felony under former Vehicle Code section 23175 (added by Stats.1983, ch. 637, § 3, repealed by Stats.1998, ch. 118, § 41 eff. July 1, 1999), a statute operating similar to section 647.6, subdivision (c)(2), and to enhance his sentence pursuant to section 667.5, subdivision (b). The court concluded, however, that the prior conviction could be used for both purposes, which it found distinct. (People v. Coronado, supra, 12 Cal.4th at p. 153, 48 Cal.Rptr.2d 77, 906 P.2d 1232.) The court's decision to allow dual use of the prior in this context is consistent with our conclusion that these sentence-enhancing factors are neither enhancements nor elements of the offense and may be considered for purposes of calculating the statute-of-limitations period under section 805.

We also reject Shaw's equal protection argument. In order to prove a violation of equal protection, the proponent of the argument must prove he or she is similarly situated to one treated differently under the statute. (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253, 127 Cal.Rptr.2d 177, 57 P.3d 654 [first inquiry in equal protection claims is whether state has adopted classification affecting two or more similarly situated groups in unequal manner].) A person who annoys or molests a child, and has done so in the past, is not similarly situated to one who has committed the same offense but has never before done so. (See People v. Coronado, supra, 12 Cal.4th at p. 153, 48 Cal.Rptr.2d 77, 906 P.2d 1232 [one who has before been convicted of same offense is more blameworthy offender].)

Shaw also contends that count six (§ 288, subd. (c)(1), committed against B.B.) was time barred because the earliest date in the range of time alleged for the conduct fell outside the applicable statute-of-limitations period. All parties agree the prior statute of limitations on count six would have expired on June 13, 2007, and prosecution did not begin until June 27, 2007. The Attorney General, however, has pointed out that the statute-of-limitations period for a violation of section 288 was extended to any time prior to the victim's 28th birthday before the statute of limitations expired in this case. (§ 801.1, subd. (a), amended by Stats.2005, ch. 479, § 2; see also Stogner v. California (2003) 539 U.S. 607, 618–619, 123 S.Ct. 2446, 156 L.Ed.2d 544 [if limitations period extended before current period expires, no constitutional violation].) Shaw concedes this is correct. We accept the concession.

(LD 4, pp. 6-11).

## B.   The Federal Standard For Equal Protection

The Supreme Court has held that the equal protection clause means "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Texas v. Cleburne Living

10

1  Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985); Clark v. California, 123 F.3d 1267, 1270 (9th

2  Cir. 1997).   The first step in any equal protection analysis is to identify the petitioner's classification

3  or group.  Freeman v. City of Santa Ana, 68 F.3d 1180, 1187 (9th Cir. 1995).  The petitioner must

4  show that the law has been applied in a discriminatory manner on him or imposes different burdens on

5  different groups.  Id.; Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988).  The second step requires

6  the Court to determine the level of scrutiny with which the Court should review the statute.  Freeman,

7  68 F.3d at 1187.  Discrimination on the basis of race or national origin and discrimination that affects

8  fundamental rights are subject to strict scrutiny. Clark v. Jeter, 486 U.S. 456, 461 (1988).

9  　　　　To succeed on the first step of an equal protection claim, petitioner must show that the decision

10 makers in his case acted with a discriminatory purpose.  McCleskey v. Kemp, 481 U.S. 279, 292-93,

11 107 S.Ct. 1756, 1767 (1987); Wayte v. United States, 470 U.S. 598, 608-09, 105 S.Ct. 1524, 1531-32

12 (1985); United States v. Bourgeois, 964 F.2d 935, 938 (9th Cir. 1992).

13 　　　　In other words, petitioner must show others similarly situated vis-à-vis the statute of limitations

14 were victims of a discriminatory intent by prosecutors and the State of California.  Bourgeois, 964 F.2d

15 at 938.  Petitioner has only alleged that as a recidivist, he is being treated differently than those who are

16 not.  Petitioner has not shown that the decision to create a longer statute of limitation for defendants

17 with a prior conviction than those without was in any way the result of a discriminatory motive by the

18 district attorney or California courts.  See Wayte, 470 U.S. at 609, 105 S.Ct. at 1531.

19 　　　　Also, to prevail on this claim, petitioner must show he is a member of a class that was denied a

20 benefit available to other similarly situated persons.  Freeman v. City of Santa Ana, 68 F.3d 1180,

21 1187 (9th Cir. 1995); Christy v. Hodel, 857 F.2d 1324, 1331 (9th Cir. 1988).   The Court must then

22 determine the level of scrutiny with which the Court should review the statute.  Freeman, 68 F.3d at

23 1187.  Petitioner has neither alleged that he is a member of a suspect class that has been denied parole

24 when people outside the class have been granted parole nor that this case concerns a fundamental

25 right.  See Clark v. Jeter, 486 U.S. 456, 461, 108 S.Ct. 1910, 1914 (1988) (discrimination on the basis

26 of race or national origin and discrimination that affects fundamental rights are subject to strict

27 scrutiny); Mayner v. Callahan, 873 F.2d 1300, 1302 (9th Cir. 1989) (prisoners are not a suspect class

28 and a parole consideration is not a fundamental right requiring a higher level of scrutiny).

11

For statutory challenges made on constitutional equal protection grounds, the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate government interest. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985); Von Robinson v. Marshall, 66 F.3d 249, 251 (9th Cir.1995); United States v. Harding, 971 F.2d 410, 412 (9th Cir.1992).

C. Discussion

A statutory sentencing scheme that does not disadvantage a suspect class or infringe upon the exercise of a fundamental right, as is the case here, is subject only to rational basis scrutiny. See Harding, 971 F.2d at 412.   It can be disturbed only if petitioner can prove "that there exist no legitimate grounds to support the classification" (Id. at 413, citing, Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464 (1981)); Petitioner cannot.

Here, the California Court of Appeal adequately explained that Petitioner could not prove that he was "similarly situated with one treated differently under the statute" because a "person who annoys or molests a child, and has done so in the past, is not similarly situated to one who has committed the same offense but has never before done so." (LD 4, p. 11).  Indeed, Petitioner's equal protection rationale completely misses the point since he fails to show that individuals who have previously committed the same type of sexual assault on minors were treated differently from Petitioner himself, who also had committed prior sexual assaults on minors.  Moreover, to extend the 5th DCA's reasoning, were Petitioner correct in his contention, then virtually any enhancement for a prior conviction, for example, would be a violation of equal protection vis-à-vis first time offenders who committed the same underlying offense.  This clearly is not the case.  The Court sees no basis to reach a different result when a statute of limitation, rather than an enhanced sentence, is the basis for disparate treatment of offenders. See Graham v. West Virginia, 224 U.S. 616, 630-631 (1912) (defendant not denied equal protection under Fourteenth Amendment when sentenced to a longer prison term due to prior conviction because all defendants with prior convictions were treated similarly).

Since there is an adequate rational basis for the statutory classification at issue, Petitioner is not entitled to federal habeas relief on this claim.

///

1  II.    Insufficiency Of The Evidence As To Counts Two and Three

2      Next, Petitioner argues that insufficient evidence was presented to support convictions on

3  counts two and three.  Petitioner is mistaken.

4      A.   The 5th DCA's Decision.

5  The 5th DCA rejected Petitioner's claim as follows:

6  Shaw contends that there was insufficient evidence to support the conviction on count two,
   lewd and lascivious conduct, and count three, annoying and molesting a child. The counts arise
7  out of the conduct, which occurred between Shaw and eight-year-old A.B. on some unknown
   date.
8
   The standard of appellate review is settled when a defendant claims there is insufficient
9  evidence to support a jury verdict: The appellate court reviews the whole record in the light
   most favorable to the judgment to determine whether it discloses evidence that is reasonable,
10 credible, and of solid value from which a trier of fact could find the defendant guilty beyond a
   reasonable doubt. (People v. Wilson (2008) 44 Cal.4th 758, 806.)  Before a judgment will be
11 reversed on the grounds that there is insufficient evidence to support a jury's determination of
   guilt, it must appear that "upon no hypothesis whatever is there sufficient substantial evidence
12 to support it." (People v. Redmond (1969) 71 Cal.2d 745, 755.)

13 To uphold a conviction of a section 288, subdivision (a), offense, there must be substantial
   evidence satisfying the following elements: (I) the defendant touched a child under the age of
14 14, (2) with the specific intent of arousing or gratifying the sexual desires of the defendant or
   the child. (People v. Imler (1992) 9 Cal.App.4th 1178, 1181- 1182.)  A.B. testified that, while
15 alone in a bedroom with Shaw, Shaw pushed her onto the bed so that her legs were separated
   and hanging over the bed. A.B. said that Shaw stood between her legs and "went in circles,"
16 moving his private parts towards her, and "almost pushed on me." She said he did not touch
   her with his hands, but he continued to move in circles, "trying to move them [his private area
17 and waist] towards me." When asked specifically whether he ever brushed his private area up
   to her vaginal area, A.B. answered "yes." A.B. was a very credible witness, despite her young
18 age. Her testimony alone is sufficient to establish the touching element of the offense. She also
   told her mother that Shaw had "touched" her inappropriately. The jury was free to conclude the
19 "brush" was a touch given the circumstances.

20 There is also sufficient evidence to support a conclusion that Shaw touched A.B. with the
   specific intent to arouse or gratify himself and/or A.B. Shaw asked A.B. whether "it felt good."
21 The jury was free to draw the inference that this comment referred to sexual gratification,
   particularly given the context and Shaw's past history, even though Shaw now claims he was
22 simply asking whether it felt good to dance. His alleged usage of the phrase in this context was
   awkward and it is not surprising the jury rejected it. In any event, we cannot say no reasonable
23 juror could have concluded that Shaw was making a sexual reference when he used the phrase.

24 For the same reasons, we conclude count three is supported by substantial evidence. Shaw
   claims his conduct was not objectively offensive nor did it suggest abnormal sexual interest in
25 a child. These are the elements of a section 647.6, subdivision (a), offense. (People v. Lopez
   (1998) 19 Ca1.4th 282, 289.) The jury could reasonably conclude that Shaw's conduct with
26 A.B. could be objectively and unhesitatingly viewed as irritating or disturbing to a child and
   prompted by an abnormal sexual interest in children. Given the context of the acts in question,
27 an objective observer would not view Shaw's conduct as "an uncle doing a silly dance,
   clowning to amuse his eight-year-old niece."

28

13

We also see no merit in Shaw's claim that the verdict is flawed because A.B. could not establish exactly when the offense occurred. Shaw claims that A.B. could not name a day or month and therefore could not set the general time period in which the acts occurred. A.B. testified that the incident occurred when she was in the third grade and was eight years old. This is sufficient. A victim 's testimony establishing the type of conduct involved, its frequency, and that the conduct occurred during the limitation period is sufficient. "Nothing more is required to establish the substantiality of the victim's testimony in child molestation cases." (People v. Jones (1990) 51 Cal.3d 294, 316.)

(LD 4, pp. 11-13).

B.   The Federal Standard For Sufficiency Of The Evidence.

The law on sufficiency of the evidence is clearly established by the United States Supreme Court.  Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows:

[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990).  Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief.  Jackson, 443 U.S. at 324.   Sufficiency claims are judged by the elements defined by state law.  Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'"  See id., quoting Jackson, 443 U.S. at 319.  Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted.  See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  Bruce v. Terhune, 376

14

F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, <u>Jackson</u> does not

permit a federal court to revisit credibility determinations.  <u>See id.</u> at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a

conviction.  <u>Walters v. Maass</u>, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion and

speculation cannot support logical inferences.  <u>Id.</u>; <u>see, e.g.</u>, <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1278-

1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of

aiding and abetting).

After the enactment of the AEDPA, a federal habeas court must apply the standards of <u>Jackson</u>

with an additional layer of deference.  <u>Juan H.</u>, 408 F.3d at 1274.  Generally, a federal habeas court

must ask whether the operative state court decision reflected an unreasonable application of <u>Jackson</u>

and <u>Winship</u> to the facts of the case.  <u>Id.</u> at 1275.[1]

Moreover, in applying the AEDPA's deferential standard of review, this Court must also

presume the correctness of the state court's factual findings.  28 U.S.C. § 2254(e)(1); <u>Kuhlmann v.</u>

<u>Wilson</u>, 477 U.S. 436, 459, 106 S.Ct. 2616 (1986).  This presumption of correctness applies to state

appellate determinations of fact as well as those of the state trial courts.  <u>Tinsley v. Borg</u>, 895 F.2d

520, 525 (9th Cir.1990).  Although the presumption of correctness does not apply to state court

determinations of legal questions or mixed questions of law and fact, the facts as found by the state

court underlying those determinations are entitled to the presumption.  <u>Sumner v. Mata</u>, 455 U.S. 539,

597, 102 S.Ct. 1198 (1981).

Recently, in <u>Cavazos, v. Sm</u>ith, __U.S. __, 132 S.Ct. 2 (2011), the United States Supreme

Court further explained the highly deferential standard of review in habeas proceedings, by noting that

<u>Jackson</u>,

> "makes clear that it is the responsibility of the jury—not the court—to decide what conclusions
> should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's
> verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed
> with the jury. What is more, a federal court may not overturn a state court decision rejecting a
> sufficiency of the evidence challenge simply because the federal court disagrees with the state

---

[1]Prior to <u>Juan H.</u>, the Ninth Circuit had expressly left open the question of whether 28 U.S.C. § 2254(d) requires an
additional degree of deference to a state court's resolution of sufficiency of the evidence claims.  <u>See</u> <u>Chein v. Shumsky</u>,
373 F.3d 978, 983 (9th Cir. 2004); <u>Garcia v. Carey</u>, 395 F.3d 1099, 1102 (9th Cir. 2005).

court. The federal court instead may do so only if the state court decision was "objectively unreasonable." Renico v. Lett, 559 U.S. ——, ——, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (internal quotation marks omitted).

Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

Cavazos, 132 S.Ct. at 3.

"Jackson says that evidence is sufficient to support a conviction so long as 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' 443 U.S., at 319, 99 S.Ct. 2781. It also unambiguously instructs that a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id., at 326, 99 S.Ct. 2781.

Cavazos, 132 S.Ct. at 6.

C.   Discussion

Sufficiency claims are judged by the elements defined by state law. Jackson, 443 U.S. at 324, n. 16. In reviewing sufficient of the evidence claims, California courts expressly follow the standard enunciated in Jackson. See People v. Johnson, 26 Cal.3d 557, 575-578 (1980); see also People v. Thomas, 2 Cal.4th 489, 513 (1992). Counts two and three involve two separate California statutes, i.e., Pen. Code §§ 288(a) and 647.6(c)(2). The elements of the former are that the defendant (1) touched a child under the age of fourteen (2) with the specific intent to arouse either himself or the child. Cal. Pen. Code § 288(a); People v. Imler, 9 Cal.App.4th 1178, 1181-1182 (1992). A violation of § 647.6(c)(2) requires that the prosecution prove only that the defendant "annoyed or molested" a child under the age of eighteen. Cal. Pen. Code § 647.6(c)(2).

The 5th DCA recounted at length the relevant evidence of Petitioner's guilt as to these two counts. In brief, the salient facts are that the victim testified that Petitioner "brushed" his private parts against her vaginal area while standing between her legs and that he "went in circles" moving his private parts toward her vagina. (LD 4, p. 12). The appellate court also noted that while Petitioner was touching the victim, he asked her if "it felt good." (Id.). Such evidence was, by itself, sufficient to meet the Jackson standard on both elements of § 288(a). Moreover, applying the same logic to § 647.6(c)(2), that evidence was sufficient to establish that Petitioner "annoyed or molested" the victim when she was under the age of eighteen. Accordingly, the state court's determination was neither

1   contrary to nor an unreasonable application of clearly established federal law.

2       III.   Abuse Of Discretion In Joinder Of Claims

3       Petitioner next contends that the trial court abused its discretion and denied him a fair trial

4   when it ordered two cases, involving separate victims, joined for trial.  This contention has no merit.

5           A.   The 5th DCA's Opinion.

6   The 5th DCA rejected Petitioner's argument as follows:

7       Joint trials are permitted and "broadly allowed" by section 954. (People v. Soper (2009) 45
8       Ca1.4th 759, 772.) The requirements for consolidation were met here because each count in the
        two cases alleged the same class of crime. (See People v. Ochoa (1998) 19 Cal.4th 353, 409.)
9       When a defendant seeks to sever cases properly joined or objects to consolidation, the trial
        court is to consider " ( 1 ) the cross-admissibility of the evidence in separate trials; (2) whether
10      some of the charges are likely to unusually inflame the jury against the defendant; (3) whether
        a weak case has been joined with a strong case or another weak case so that the total evidence
11      may alter the outcome of some or all of the charges; and (4) whether one of the charges is a
        capital offense, or the joinder of the charges converts the matter into a capital case." (People v.
        Mendoza (2000) 24 Cal.4th 130, 161.)

12
        We will reverse a trial court's order on the question of consolidation only if the trial court's
13      ruling falls outside the bounds of reason. (People v. Ramirez (2006) 39 Cal.4th 398, 439.) We
        must also determine whether, even if consolidation were correct, the joint trial actually resulted
14      in gross unfairness, amounting to a denial of due process. (People v. Arias (1 996) 13 Cal.4th
        92, 127.)
15
        In this case, because of the similarity of the acts committed against similarly situated victims,
16      the evidence of each of the offenses charged in both cases would have been cross-admissible
        under Evidence Code section 1101 to show intent, plan, or common scheme. (People v. Soper,
17      supra, 45 Cal.4th at p. 776.) Both cases involved similar acts of molestation of young girls and,
        as a result, no single one was likely to unusually inflame the jury against Shaw with respect to
18      any of the others. The cases were supported by essentially the same evidence—a complaining
        witness who was credible at trial and who reported amazingly similar acts without prior
19      knowledge (or in B.B.'s case, detailed knowledge) of each other's claims or of Shaw's prior
        convictions. Shaw claims that both cases were weak, the B.M. and A.B. case because it
20      involved only "borderline" conduct, and the B.B. case because, although it involved more
        serious conduct, it consisted of generic complaints and not specific testimony by the
21      complaining victim. We disagree. Each of these cases standing alone would have been fairly
        strong. The victims were articulate despite their young ages and, although not exact in detail,
22      sufficiently specific in their description of the acts committed. Evidence of Shaw's similar prior
        convictions was admissible in both cases. There was no abuse of discretion and no due process
23      violation occurred. (People v. Bean (1988) 46 Cal.3d 9 19, 938-940 [no due process violation
        where defendant does not demonstrate reasonable probability that joint trial affected jury's
24      verdict].)

25   (LD 4, pp. 13-15).

26           B.   Applicable Legal Principles.

27       As correctly argued by Respondent (Doc. 15, p. 24), there is no clearly established Federal law

28   which holds that joinder or consolidation of charges may violate the Constitution. In United States v.

1    Lane, 474 U.S. 438, 446, n. 8, 106 S.Ct. 725 (1986), the Supreme Court stated in a footnote that

2    "[i]mproper joinder does not, in itself, violate the Constitution. Rather, misjoinder would rise to the

3    level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth

4    Amendment right to a fair trial."  However, in Young v. Pliler, the Ninth Circuit noted:

5         Lane considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and
          expressly stated that no constitutional claim had been presented. See Lane, 474 U.S. 438, 446
6         & n. 9, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986). Thus, Lane's broad statement-found in a
          footnote without citation to any legal authority-that misjoinder could only rise to the level of a
7         constitutional violation if it was so prejudicial as to violate due process, was probably dictum.
          Only Supreme Court holdings are controlling when reviewing state court holdings under 28
8         U.S.C. § 2254; Court dicta and circuit court authority may not provide the basis for granting
          habeas relief. Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144
9         (2003).

10   Young, 273 Fed.Appx. 670, n. 1, 2008 WL 1757564 (9th Cir.2008) (unpublished); see also Collins v.

11   Runnels, 603 F.3d 1127, 1132–33 (9th Cir.2010).

12        In ascertaining what is "clearly established Federal law," this Court must look to the "holdings,

13   as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court

14   decision." Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under §

15   2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the

16   state court renders its decision." Id.

17                              C.   Discussion

18        First, as discussed above, since there is no clearly established Federal law regarding whether

19   misjoinder constitutes a federal constitutional violation, the Court cannot grant relief since habeas

20   relief is triggered only when the state court adjudication runs afoul of clearly established federal law.

21        However, even assuming, arguendo, that the Supreme Court's footnote in Lane could be

22   considered clearly established Federal law, no constitutional violation occurred in this case.

23   "Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the

24   level of a constitutional violation only if it results in prejudice so great as to deny a defendant his right

25   to a fair trial."  United States v. Lane, 474 U.S. at 446, fn. 8.  Joinder of offenses results in a

26   constitutional violation only if it renders a state trial unfair and violates due process.  Herring v.

27   Meachum, 11 F.3d 374, 377 (2nd Cir. 1993).  A defendant must show that actual prejudice resulted

28   from the events as they unfolded during trial.  Herring, supra, 11 F.3d at 378, citing Opper v. U.S., 348

                                           18

1  U.S. 84, 94-95 (1954).  This prejudice is shown if the impermissible joinder had a substantial and

2  injurious effect or influence in determining the jury's verdict.  See Bean v. Calderon, 163 F.3d 1073,

3  1086 (9th Cir.1998); see also, Spencer v. Texas, 385 U.S. 554, 562 (1967) (while some prejudice may

4  flow from joinder of offenses in criminal offenses, the risk is justified by convenience and guarded

5  against by limiting instructions); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991)

6  (consolidation rests in the sound discretion of the state trial court).

7       As Respondent correctly argues, Petitioner has failed to show prejudice from the joinder and

8  thus, is not entitled to habeas relief.  (Doc. 15, p. 24).  The 5th DCA concluded that Petitioner suffered

9  no prejudice from the joinder because the crimes were similar in nature and would therefore have been

10  cross-admissible even had the cases been tried separately.  (LD 4, pp. 13-14).  Under the AEDPA,

11  Petitioner's task is to establish that this state court adjudication was objectively unreasonable.  28

12  U.S.C. § 2254(d).  Although Petitioner objects to the joinder in his petition, he fails to explain how the

13  state adjudication referenced above is unreasonable, let alone objectively so, nor how it was so highly

14  prejudicial as to constitute a denial of a fair trial under the U.S. Constitution.  Lane, 474 U.S. at 446,

15  fn. 8.  Accordingly, even were there "clearly established" federal law on this issue, Petitioner fails to

16  establish the requisite prejudice that would entitle him to relief.

17       IV.    Exclusion Of Evidence Violated Due Process

18       Finally, Petitioner argues that a series of evidentiary rulings at trial violated his federal due

19  process rights.  Again, the claim lacks merit.

20       A.    The 5th DCA's Decision.

21  The 5th DCA rejected Petitioner's arguments as follows:

22  A.  Cross-examination regarding Shaw's earlier denial

23  At trial, the prosecutor offered into evidence a recorded conversation between B.M. and Shaw
and a videotaped meeting between B.M., Shaw, and B.M.'s mother, Theresa M. At trial, there

24  was evidence of other conversations with Shaw, but their content was not introduced. Shaw
attempted to cross-examine both Theresa M. and B.M about what Shaw said during the earlier

25  conversations. The prosecutor objected and the trial court sustained the objections, ruling that
defense counsel could not ask about what Shaw said in the earlier conversations. Shaw claims

26  that the trial court erred when it prevented him from cross-examining B.M. and Theresa M. on
what was said during the earlier calls. He argues that the evidence was admissible under

27  Evidence Code section 356 and that he should have been able to show the jury his theory of the
case, i.e., that he originally denied the allegations made by B.M. and only admitted them after

28

Theresa M. told him that B.M. was suicidal and that Theresa M. would call the police if he did not.

Evidence Code section 356 permits introduction of otherwise hearsay statements, which are part of the "whole" of the conversation (on the same subject) when necessary for the understanding of or to give context to the other parts of the conversation. (People v. Lewis (2008) 43 Cal.4th 415, 458; People v. Breaux (1991) 1 Cal.4th 28 1,302.) He claims this evidence established that his admissions were coerced and that he had a federal constitutional right to present evidence to help the jury determine what weight his admission should be given. (See Crane v. Kentucky (1986) 476 U.S. 683, 690-691[evidence surrounding making of confession bears on its credibility and is highly relevant for jury's consideration on question of guilt].)

Even if Shaw should have been allowed to cross-examine B.M. and Theresa M. about the earlier conversations, an issue we do not decide, there is no prejudice. Since the confrontation clause or due process error alleged, if found, would be federal constitutional error, we have evaluated prejudice under the Chapman v. California (1967) 386 U.S. 18 standard.

Theresa M. testified that when she first called Shaw, she told him she knew what he had done to her daughter, but that Shaw said he did not know what she was talking about. She testified that, after his denial, Theresa M. told Shaw that she would call the police if he did not agree to talk with B.M. and tell her this was not her fault. According to Theresa's testimony, it was only then that Shaw agreed to talk with B.M., but he was "very reluctant." In the recorded conversation between Shaw and B.M., Shaw is very hesitant to claim responsibility for the acts B.M. alleged he had committed and repeatedly inquired into how B.M was doing. During that same conversation, B.M. states that Shaw completely denied any inappropriate behavior when she first confronted him. B.M. herself tells Shaw a number of times that she is having trouble dealing with things, that she needs to be able to recover and to move forward, and that she can only do so if Shaw is "just honest" with her.

The jury also saw the videotaped meeting between Theresa M. and Shaw in which Theresa M. asks Shaw to speak with B.M. because B.M. is despondent, upset, and ashamed. Theresa M. tells Shaw that she has found a bottle of pills in B.M.'s bedroom and is concerned. Theresa specifically asks Shaw if he remembers when B.M. tried to call him a couple of months earlier and Shaw "just kinda blew her off." Theresa M. told Shaw that B.M. "felt like you were denying it." In the video, Shaw talks directly to B.M. and says "if you' re having any thoughts about doing things to yourself, this prayer should have killed that. You have no reason to feel guilty honey, none. You have no reason to be ashamed, none, none at all." Finally, Shaw himself testified that Theresa M. called and told him that B.M. was trying to kill herself and was going crazy. Shaw testified that he admitted to the alleged offenses because he did not want Theresa M. to go to the police and because he wanted to help B.M. This evidence unquestionably presents the issue to the jury and supports Shaw's contention that he admitted molesting B.M. only after being told B.M. might be suicidal and after being threatened with law enforcement if he did not agree to help her.

In any event, this defense strategy pales in light of the overwhelming strength of the evidence, particularly the testimony of the three victims. Further, Shaw, with his past, would have known the serious impact of a feigned admission. His claim that he feigned his admission is not credible and, not surprisingly, was rejected by the jury. Any error was harmless beyond a reasonable doubt.

B.  Inability to cross-examine Theresa M.

In a related argument, Shaw contends that the trial court denied him the right to confront Theresa M. when it prevented cross-examination about the exact words he used when he admitted to her in an umecorded phone conversation that he had molested B.M. (See People v.

Gutierrez (1982) 137 Cal.App3d 542, 546 [defendant entitled to crossexamine on actual words used in making out-of-co1ll1 admission].) The trial court sustained the prosecutor's objection to the questioning on hearsay grounds. The Attorney General concedes that it was error to prevent Shaw from cross-examining Theresa M., but argues there was no prejudice. We agree.

Theresa M. testified on direct examination that Shaw admitted he had touched B.M.'s breast and between her legs and that he had kissed her. Although Shaw was not allowed to cross-examine Theresa M. on the exact words used, her testimony is consistent with the recorded conversation between Theresa M. and Shaw where Shaw states, "I touched her boobs sometime" and "I had my [hand] between her leg[s] like this and I was patting on her thigh." In this same conversation, Shaw admits that he "kissed [B.M.] on the cheek" and "I kissed her on the mouth." Theresa M.'s summary of Shaw's statement is so close in content to the words the jury actually heard Shaw use later in his recorded conversation, we see no prejudice to Shaw in his inability to cross-examine about the actual words used in the earlier conversation. Applying the Chapman standard of review, we conclude that, in light of the overall strength of the evidence against Shaw, any error was harmless beyond a reasonable doubt.

C.  Miscellaneous evidentiary rulings

Shaw challenges three additional trial court evidentiary rulings. We reject all three and conclude there is no abuse of discretion. (People v. Waidla (2000) 22 Cal.4th 690, 717-718 [on appeal, trial court's decision to admit or exclude evidence is reviewed for abuse of discretion].)

According to Shaw, B.B. came to the jail with Shaw's stepdaughter and, while there, told Shaw she would help him "fight this." B.B. claims that she was accompanying her friend to provide support during a visit to Shaw's jail cell. The prosecutor objected on hearsay grounds, and the court sustained the objection. Shaw contends that the statement was offered to attack B.B.'s credibility on the theory that a victim would not willingly assist her molester. If this was the true purpose of the proffered statement, Shaw had to have been seeking admission of the out-of-court statement to prove the truth of the matter asserted, e.g., that B.B. was willing to help Shaw. This is the classic definition of hearsay and the court properly sustained the objection. (Evid. Code, § 1200, subd. (a).) Even if we accepted Shaw's argument that the statement was not hearsay but merely circumstantial evidence of B.B.'s feelings toward Shaw at the time, we would conclude there was no prejudice in excluding the evidence. B.B's testimony was strong. The similarity between Shaw's molestation of B.B. and of his other victims was marked. Given the context of the alleged statement, it is unlikely the jury would have found B.B.'s statement to be a proper basis to reject her testimony, even had they believed she made the statement as Shaw alleges.

Shaw also argues that he should have been allowed to testify that B.B. had been "kicked off the [school] bus," because the evidence would explain why he gave an unrelated young girl rides to school. The trial court excluded the information, finding that it was irrelevant and that it was based on hearsay and not personal knowledge.

There was no foundation laid for how Shaw knew that B.B. had been kicked off the bus. Although the trial court cut off defense counsel when the objection was argued before the jury, at the next recess, when the issue resurfaced, defense counsel failed to place an offer of proof on the record that a proper foundation could be made. In order to preserve an evidentiary objection for appeal, counsel must present an offer of proof. (Evid. Code, § 354, subd. (a) .) Additionally, even if admissible and relevant to explain why Shaw was giving B.B. a ride to school, we would conclude that Shaw suffered no prejudice. B.B. was Shaw's stepdaughter's good friend. She was a constant presence in the Shaw household. B.B. testified that, some of the time, Shaw took both girls to school. Although the jury might consider this unwise given Shaw's prior convictions, it is unlikely that his failure to explain that B.B. needed the ride would have affected the jury's verdict in any way.

21

Lastly, we reject Shaw's claim that he was prejudiced when the trial court excluded evidence that B.B. "was influenced by child molester posters." Shaw also claims that he should have been allowed to testify that B.B.'s father called him and confronted him about the posters. We reject both arguments concluding that, whether erroneously excluded or not, this evidence would not have influenced the jury's verdict under any standard of review. B.B. testified she knew that fliers about Shaw had been posted at a riding stable, but that she had not seen them. She also testified that, after Shaw was arrested on the other cases, her father asked her a number of times whether Shaw had ever touched her inappropriately. She repeatedly said no. B.B. admitted that she knew Shaw had been arrested for molesting B.M. and A.B. before she reported her molestation. She also admitted she knew he had molested AJ.

In light of this evidence, the jury clearly understood that B.B. came forward, in part because the other victims had come forward and that she knew Shaw had a history of molestation before she reported him. The jury nonetheless found B.B. credible and, therefore, rejected Shaw's theory that knowledge about Shaw's past and pressure from her father influenced B.B. It is highly unlikely that more detailed information about what the posters said or what B.B.'s father told Shaw about the posters would have made a difference in the way the jury evaluated this evidence.

In a related argument, Shaw claims that the trial court erred in overruling his objection to a statement made by the prosecutor during closing argument. During argument, the prosecutor told the jury that "[s]ome of [the victims] did know about the defendant's past (italics added)," but then went on to say that all three of the victims, including B.B., had not known, even though B.B. did know. The trial court overruled defense counsel's objection and stated, "I'll allow the jury to make those final factual calls. This is in the realm of the evidence." In the rebuttal argument, the prosecutor again told the jury there was no evidence that any of the victims knew about Shaw's past or about the fliers. This again was wrong. We believe the jury would have readily seen this as a mistake and discounted the argument, given B.B.'s clear testimony that she did know something about Shaw's past when she reported her abuse and certainly knew that two others had recently made claims that Shaw had molested them. The court told the jury they were the final arbitrators of fact, and the jury was instructed that the argument of counsel was not evidence.

Finally in this category, we reject Shaw's claim that the cumulative effect of these alleged errors prejudiced him. There were few errors, and the ones we have identified were small and rendered insignificant, individually and collectively, given the strength of the evidence.

(LD 4, pp. 15-20).

    B.   Discussion.

    In his fourth claim for relief, Petitioner raises five instances of evidentiary rulings that, he

contends, entitle him to habeas relief: (1) the trial court's ruling not to permit Petitioner to cross-

examine two victims regarding Petitioner's statements in a pretext telephone call; (2) the trial court's

refusal to permit Petitioner to cross-examine victim Theresa M. regarding statements he made to her;

(3) exclusion of victim B.B.'s statement of support for Petitioner; (4) exclusion of evidence that victim

B.B. could not ride the school bus; and (5) exclusion of evidence that victim B.B. was influenced by

posters that stated Petitioner was a child molestor.  (Doc. 1, pp. 14-17).  Respondent argues that these

1    state evidentiary rulings fail to raise cognizable federal habeas claims.  The Court agrees.

2           The basic scope of habeas corpus is prescribed by statute. Subsection (c) of Section 2241 of

3    Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he

4    is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall

5    entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in

6    violation of the Constitution or laws or treaties of the United States. See also, Rule 1 to the Rules

7    Governing Section 2254 Cases in the United States District Court. The Supreme Court has held that

8    "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . ."

9    Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). Furthermore, to succeed in a petition pursuant to 28

10   U.S.C. § 2254, Petitioner must demonstrate the adjudication of his claim in state court resulted in a

11   decision that was contrary to, or involved an unreasonable application of, clearly established Federal

12   law, as determined by the Supreme Court of the United States; or resulted in a decision that was based

13   on an unreasonable determination of the facts in light of the evidence presented in the State court

14   proceeding. 28 U.S.C. § 2254(d)(1), (2).

15          Petitioner's evidentiary claims do not legitimately allege a violation of the Constitution or

16   federal law, nor do they argue that Petitioner is in custody in violation of the Constitution or federal

17   law. Petitioner does not allege that the adjudication of his claims in state court "resulted in a decision

18   that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or

19   resulted in a decision that was based on an unreasonable determination of the facts . . . ." 28 U.S.C.

20   §2254. Instead, as Respondent correctly argues, Petitioner raises only state law claims, and, generally,

21   issues of state law are not cognizable on federal habeas review.  Estelle v. McGuire, 502 U.S. 62, 67

22   (1991)("We have stated many times that 'federal habeas corpus relief does not lie for errors of state

23   law.'"), quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349

24   (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a

25   constitutional violation, may not be corrected on federal habeas").[2]

26

27   _____

28   [2]  Additionally, even under state law, the 5th DCA concluded that Petitioner's third, fourth, and fifth evidentiary claims did not rise to an abuse of discretion by the state court under California law.  (LD 4, p. 18).

1    Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v.

2    Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).  Further, "the

3    availability of a claim under state law does not of itself establish that a claim was available under the

4    United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting*, Dugger v. Adams,

5    489 U.S. 401, 409 (1989). Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S.

6    1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief).

7    However, even assuming, arguendo, that some evidentiary error occurred during the trial, the

8    Court agrees with the state appellate court that any error was harmless.  Where a state court conducts a

9    harmless error review, as in this case, this Court must follow a two-step process to grant habeas relief:

10   (1) the Court must conclude that the state court's decision was "contrary to" an "unreasonable

11   application" of Supreme Court harmless error precedent as set forth in Chapman v. California, 386

12   U.S. 18 (1967); and (2) the Court must conclude that Petitioner suffered prejudice under the federal

13   harmless error standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993).  Inthavong v.

14   LaMarque, 420 F.3d 1055, 1059 (9th Cir. 2005).

15   Here, Petitioner fails the two-pronged test.  First, he has failed to show that the 5th DCA

16   improperly applied federal harmless error analysis set out in Chapman, i.e., that any error was harmless

17   beyond a reasonable doubt.  The 5th DCA explained that the evidence against Petitioner was strong: six

18   victims testified that Petitioner had sexually assaulted them; Petitioner had previously been convicted

19   of child molestation; and Petitioner acknowledged in a telephone conversation that he had molested one

20   of the victims.  (LD 4, pp. 16-20).  Under such circumstances, the state court's conclusion of "harmless

21   beyond a reasonable doubt" was reasonable.  Second, Petitioner has not met the Brecht standard of

22   actual prejudice. Indeed, given the strength of the prosecution's evidence, it is difficult to see how these

23   minor exclusions of evidence could ever amount to "actual" prejudice.  Thus, Petitioner's evidentiary

24   claims do not entitle him to habeas relief.

25   Moreover, the Court declines to issue a certificate of appealability.  A state prisoner seeking a

26   writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and

27   an appeal is only allowed in certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336

28

24

(2003).   The controlling statute in determining whether to issue a certificate of appealability is 28

U.S.C. § 2253, which provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or

>> (B) the final order in a proceeding under section 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

If a court denied a petitioner's petition, the court may only issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (*quoting* Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability. Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further.  Thus, the Court DECLINES to issue a certificate of appealability.

## **ORDER**

For the foregoing reasons, the Court HEREBY ORDERS as follows:

1.  The first amended petition for writ of habeas corpus (Doc. 6), is DENIED with prejudice;

1        2.  The Clerk of the Court is DIRECTED to enter judgment and close the file;

2        3.  The Court DECLINES to issue a certificate of appealability.

3

4   IT IS SO ORDERED.

5        Dated:   __**June 21, 2013**__                    ___**/s/ Jennifer L. Thurston**
6                                                              UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28